# 23-624

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

PINE MANAGEMENT, INC.,

*Plaintiff-Counter-Defendant-Appellant,*

—against—

COLONY INSURANCE COMPANY,

*Defendant-Counter-Claimant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## PLAINTIFF-COUNTER-DEFENDANT-APPELLANT

DENNIS J. NOLAN
JOHN M. LEONARD
ANDERSON KILL P.C.
1251 Avenue of the Americas,
    42nd Floor
New York, New York 10020
(212) 278-1000

*Attorneys for Plaintiff-Counter-
    Defendant-Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pine Management, Inc. ("Pine") is a New York corporation. No parent corporation or publicly held corporation owns ten percent or more of the stock of Pine.

## TABLE OF CONTENTS

I.     FACTUAL BACKGROUND.................................................................4

     A.    The Relevant Provisions of the Colony Policy ....................................5

     B.    The Underlying Parties' History and the Schneider Complaint ..........7

     C.    Colony's Wrongful Denial of Coverage ..............................................9

II.    NEW YORK'S BROAD DUTY TO DEFEND LAW COMPELS A
     FINDING OF THAT THE SCHNEIDER COMPLAINT IS A
     COVERED CLAIM................................................................................15

III.   THE DISTRICT COURT MISAPPLIED THE STANDARD FOR
     RULING ON A MOTION FOR JUDGMENT ON THE PLEADINGS......20

IV.   CONTRARY TO THE DISTRICT COURT OPINION, THE H&K
     LETTER DOES NOT CONSTITUE A "CLAIM" BECAUSE IT DID
     NOT DEMAND MONETARY, NON-MONETARY, OR INJUNCTIVE
     RELIEF.................................................................................................23

V.    THE DISTRICT COURT ERRED IN FINDING EXCLUSION A.2
     BARRED COVERAGE. ........................................................................34

     A.    The District Court Misinterpreted the Language of Exclusion
           A.2 ....................................................................................................34

     B.    The District Court Improperly Construed Exclusion A.2
           Against Pine. ......................................................................................39

     C.    The District Court Misapplied the Standard Used to Analyze a
           "Prior Knowledge" Exclusion...........................................................40

VI.   THE DISTRICT COURT ERRED IN HOLDING THAT ALL OF THE
     ALLEGED WRONGFUL ACTS IN THE SCHNEIDER COMPLAINT
     PREDATE THE RETROACTIVE DATE.................................................46

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Actava TV, Inc. v. Joint Stock Co. "Channel One Russia Worldwide,"*
   No. 18-CV-06626 (ALC), 2023 WL 2543070 (S.D.N.Y. Mar. 15,
   2023) ................................................................................................................33

*Am. Home Assurance Co. v. Port Auth. of N.Y. and N.J.*,
   66 A.D.2d 269 (1st Dep't 1979) ........................................................................48

*In re Ambassador Grp., Inc. Litig.*,
   830 F. Supp. 147 (E.D.N.Y. 1993) ..............................................................24, 27

*Andy Warhol Found. for the Visual Arts, Inc. v. Fed. Ins. Co.*,
   189 F.3d 208 (2d Cir. 1999) ..............................................................................39

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................32, 33

*Atlantic Cas. Ins. Co. v. Value Waterproofing, Inc.*,
   918 F. Supp. 2d 243 (S.D.N.Y. 2013), *aff'd sub nom. Atlantic Cas.
   Ins. Co. v Greenwich Ins. Co.*, 548 F. App'x 716 (2d Cir. 2013) ......................39

*Auto. Ins. Co. of Hartford v. Cook*,
   7 N.Y.3d 131 (2006)............................................................................15, 16, 40

*Baines v. Nature's Bounty (NY) Inc.*,
   No. CV 21-5330 (JS), 2023 WL 2185603 (E.D.N.Y. Jan. 3, 2023) .................30

*Belt Painting Corp. v. TIG Ins. Co.*,
   100 N.Y.2d 377 (2003)......................................................................26, 37, 40

*Bryan Bros., Inc. v. Cont'l Cas. Co.*,
   660 F.3d 827 (4th Cir. 2011) ............................................................................37

*City of Pontiac Gen. Employees' Retirement Sys. v. MBIA, Inc.*,
   637 F.3d 169 (2d Cir. 2011) ..............................................................................14

*Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*,
   636 F.3d 1300 (10th Cir. 2011) ........................................................................37

*Colony Ins. Co. v. Kuehn*,
    No. 2:10-CV-01943, 2012 WL 4472038 (D. Nev. Sept. 25, 2012) ..................37

*Cont'l Cas. Co. v. JBS Constr. Mgmt., Inc.*,
    No. 09 CIV. 6697 (JSR), 2010 WL 2834898 (S.D.N.Y. July 1,
    2010) ................................................................................................15, 40

*Coregis Insurance Co. v. Goldstein*,
    32 F. Supp. 2d 508 (D. Conn. 1998)...............................................................45

*Euchner-USA, Inc. v Hartford Cas. Ins. Co.*,
    754 F.3d 136 (2d Cir. 2014) ......................................................................18, 40

*Evanston Ins. Co. v. GAB Bus. Servs., Inc.*,
    132 A.D.2d 180 (1st Dep't 1987)...............................................................23, 24

*Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*,
    16 N.Y.3d 257 (2011) ...............................................................................27, 30

*Fitzpatrick v. Am. Honda Motor Co.*,
    78 N.Y.2d 61 (1991) .................................................................................16, 52

*Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*,
    91 N.Y.2d 169 (1997) .................................................................................*passim*

*Gil Enters., Inc. v. Delvy*,
    79 F.3d 241 (2d Cir. 1996) ..................................................................19, 30, 31

*Great Am. Ins. Co. v. AIG Specialty Ins. Co.*,
    No. 20-cv-4596 (DLC), 2021 WL 1268450 (S.D.N.Y. April 6,
    2021) ..............................................................................................................36

*Great Am. Ins. Co. v. Houlihan Lawrence, Inc.*,
    449 F. Supp. 3d 354 (S.D.N.Y. 2020) ........................................................17, 33

*Gumer v. Shearson, Hammill & Co., Inc.*,
    516 F.2d 283 (2d Cir. 1974) ......................................................................21, 22

*Int'l Bus. Machines Corp. v. Liberty Mut. Fire Ins. Co.*,
    303 F.3d 419 (2d Cir. 2002) ............................................................................16

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
    309 F.3d 76 (2d Cir. 2002) ..............................................................................38

*Kirkendall v. Halliburton, Inc.*,
    707 F.3d 173 (2d Cir. 2013) ................................................................. 13

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) ................................................................. 13

*Liberty Ins. Underwriters, Inc. v. Corpina Piergrossi Overzat & Klar*
    *LLP*, 78 A.D.3d 602 (1st Dep't 2010) .......................................... *passim*

*Lynch v. City of New York*,
    952 F.3d 67 (2d Cir. 2020) .......................................................... 15, 30

*Madonna v. United States*,
    878 F.2d 62 (2d Cir. 1989) ......................................................... *passim*

*Mendes & Mount v. Am. Home Assurance Co.*,
    97 A.D.2d 384 (1st Dep't 1983) ........................................................ 48

*N. River Ins. Co. v. Leifer*,
    No. 21-CV-7775, 2022 WL 1210847 (S.D.N.Y. 2022) ..................... 45

*Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*,
    295 F. Supp. 2d 335 (S.D.N.Y. 2003) .............................................. 17

*Nomura Holdings America, Inc. v. Fed. Ins. Co.*,
    629 F. App'x 38 (2d Cir. 2015) ................................................... 48, 49

*OneBeacon Insurance Co. v. T. Wade Welch & Associates*,
    841 F.3d 669 (5th Cir. 2016) ...................................................... 38, 39

*Purcigliotti v. Risk Enter. Mgmt. Ltd.*,
    240 A.D.2d 205 (1st Dep't 1997) ...................................................... 24

*Schlather, Stumbar, Parks & Salk, LLP v. One Beacon Insurance Co.*,
    No. 5:10-CV-0167, 2011 WL 6756971 (N.D.N.Y Dec. 22, 2011) ... 41

*Schwartz Manes Ruby & Slovin, L.P.A. v. Monitor Liab. Managers,*
    *LLC*, 483 F. App'x 241 (6th Cir. June 15, 2012) .............................. 37

*Seaboard Sur. Co. v. Gillette Co.*,
    64 N.Y.2d 304, 312 (1984) ........................................................ *passim*

*Seneca Ins. Co. v. Kemper Ins. Co.*,
　No. 02 CIV. 10088 (PKL), 2004 WL 1145830 (S.D.N.Y. May 21,
　2004), *aff'd*, 133 F. App'x 770 (2d Cir. 2005) ................................................. 25

*Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*,
　64 N.Y.2d 419 (1985) .......................................................................................... 39

*Sheppard v. Beerman*,
　18 F.3d 147 (2d Cir. 1994) ........................................................................... 49, 50

*Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*,
　34 N.Y.2d 356 (1974) .......................................................................................... 39

*Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*,
　98 N.Y.2d 435 (2002) ..................................................................................... 40, 48

*Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
　25 N.Y.3d 675 (2015) .......................................................................................... 38

*Util. Metal Rsch., Inc. v Generac Power Sys., Inc.*,
　179 F. App'x 795 (2d Cir. 2006) ........................................................................ 21

*Weaver v. Axis Surplus Ins. Co.*,
　13-CV-7374(SJF)(ARL), 2014 WL 550667 (E.D.N.Y. Oct. 30,
　2014), *aff'd*, *Weaver*, 639 Fed App'x 764 (2d Cir. 2016) ................................. 29

*Weaver v. Axis Surplus Ins. Co.*,
　639 F. App'x 764 (2d Cir. 2016) .................................................................. 28, 29

*Windham Solid Waste Mgmt. Dist. v. Nat'l Cas. Co.*,
　146 F.3d 131 (2nd Cir. 1998) ....................................................................... 31, 32

*Wojchowski v. Daines*,
　498 F.3d 99 (2d Cir. 2007) ................................................................................ 36

## Other Authorities

28 U.S.C. § 1291 ........................................................................................................ 1

28 U.S.C. § 1332(a)(2) .............................................................................................. 1

Fed. R. Civ. P. 12(c) ......................................................................................... 11, 13

RELIEF, Black's Law Dictionary (11th ed. 2019) ................................................ 26

## JURISDICTION

On March 24, 2022, Pine Management, Inc. ("Pine") filed a complaint against Colony Insurance Company ("Colony") seeking a declaration that Pine was entitled to insurance coverage under the policy Colony sold to Pine and seeking damages for Colony's alleged breach of contract. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). On March 20, 2023, the District Court issued a Memorandum Opinion and Order granting Colony's Motion for Judgment on the Pleadings (the "District Court Opinion"). (A. 761-70). On March 21, 2023, the District Court entered final judgment dismissing the case. (A. 771). On April 17, 2023, Pine timely filed its notice of appeal, which this Court docketed as No. 23-624. (A. 782). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Colony sold Pine a Real Estate PROtect Professional Liability Insurance policy, under which Colony promised to pay losses, including defense costs, in excess of the policy's deductible resulting from a claim first made within the policy period arising out of a wrongful act committed before the end of the policy period and after the retroactive date. On July 26, 2019, underlying claimants sued Pine in New York Supreme Court. Colony denied its duty to defend Pine against that underlying action, contending that: a claim had been made before inception of the

1

Colony policy; an exclusion barred coverage because Pine purportedly had a reasonable basis to believe that it had committed wrongful acts prior to the policy effective date; and the underlying complaint alleged no wrongful act committed on or after the policy's retroactive date.  The issues presented by this appeal are:

(1) Whether the District Court erred in granting judgment on the pleadings, dismissing the action, and concluding that Colony's extremely broad duty to defend Pine could not be triggered on the ground that the claim was not first made and reported during the policy period, when the underlying claimants did not demand monetary, nonmonetary, or injunctive relief prior to inception of the Colony policy.

(2) Whether the District Court erred in granting judgment on the pleadings, dismissing the action and concluding that Colony's extremely broad duty to defend Pine could not be triggered on the ground that a prior knowledge exclusion barred coverage, even though Pine had no reasonable basis to believe it had committed a wrongful act prior to the policy effective date.

(3) Whether the District Court erred in granting judgment on the pleadings, dismissing the action and concluding that Colony's extremely broad duty to defend Pine could not be triggered on the ground that all the alleged

2

wrongful acts in the underlying complaint are related and all predate the policy's retroactive date.

## STATEMENT OF THE CASE

This appeal implicates bedrock principles of New York law. First, New York law indisputably deems an insurance company's duty to defend extremely broad. When an underlying complaint alleges facts that even <u>potentially</u> fall within a liability policy's coverage, the insurance company must defend its policyholder. Second, on a motion for judgment on the pleadings, all allegations in plaintiff's complaint are deemed admitted, and any and all inferences from the pleadings, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case, are drawn in the non-movant's favor. A court may grant such a motion only if plaintiff has no course to victory. The District Court disregarded these principles in improperly granting Defendant Colony's motion regarding Colony's contractually obligated duty to defend Pine in the underlying action.

Were the deck stacked like this in a game of chance, the opponent would correctly recognize its minute chance of victory and fold its hand. Indeed, the District Court strongly advised Colony as much in an early conference in this case. Given the odds against a Colony victory on its motion, and given the District Court's advice to Colony, one would expect the pleadings and other documents submitted in

3

support of the Colony Motion to overwhelmingly favor judgment in favor of defendant. One would expect the arguments put forth by Colony to be undeniably compelling and dispositive. But that is not the case. The District Court Opinion cobbled together support based on a disregard for New York's duty to defend law – and a misapplication of the standard for judgment on the pleadings – to find in favor of Colony. Contrary to the District Court's flawed ruling, Colony failed to overcome its very steep burden necessary to prevail on its motion. For these reasons, and for the reasons set forth below, the District Court Opinion should be reversed.

## I.  FACTUAL BACKGROUND

Colony sold Pine Real Estate Developers PROtect Professional Liability Insurance Policy no. RE4202378-0 (the "Policy") with a policy period from August 1, 2018 to December 1, 2019 (the "Policy Period"). (A. 720). Under the Policy, Colony promised coverage for Pine's losses resulting from a claim first made and reported during the Policy Period arising out of a wrongful act committed before the end of the Policy Period and after the Policy's March 1, 2016 retroactive date (the "Retroactive Date"). (A. 723).

On July 26, 2019, Jerome Schneider, on behalf of ten New York limited liability companies (the "Schneider Group"), commenced an action against Pine and others in New York State Supreme Court under Index No. 654303/2019 (the "Schneider Complaint"). (A. 273-337). The Schneider Complaint is a "Claim" as

defined by the Policy because, as set forth below, it is a "civil proceeding" against Pine "commenced by service" during the Policy Period that demands damages and other relief arising out of wrongful acts. (A. 14). Pine provided timely notice of the Schneider Complaint to Colony on July 29, 2019. (A. 15 ¶ 45). Colony denied its duty to defend Pine on August 20, 2019. (A. 15 ¶ 46). Pine filed this action on March 24, 2022. (A. 8 - 20).

### A. The Relevant Provisions of the Colony Policy

Pursuant to the Policy, Colony agreed to provide broad, first- party liability coverage for "Claims" arising out of Pine's provision of Real Estate Development Services:

> The **Insurer** agrees to pay on behalf of the Insured, **Loss** in excess of the Deductible amount and up to the Limits of Liability shown in Item 4 of the Declarations; provided that such **Loss** results from a **Claim** first made and reported in writing during the **Policy Period** or Extended reporting Period, if applicable, arising out of a **Wrongful Act** committed before the end of the Policy Period and on or after the Retroactive Date, if any, shown in Item 8 of the Declarations.

(A. 723) (bold in original).

The Policy provides a $1 million limit of liability per "Claim" and in the aggregate. (A. 720).

The Policy defines "Loss" to mean "a monetary judgment or settlement that an Insured becomes legally obligated to pay as a result of a Claim", and it includes

Defense Costs ….."  (A. 727 ¶ L).  Accordingly, Defense Costs payments erode the

Policy limits.

The Policy defines a "Claim", in relevant part, as follows:

> **Claim** means any of the following arising from a **Wrongful Act:**
>
> 1. a written demand received by any Insured for monetary, non-monetary or injunctive relief, including a written demand that the Insured toll or waive a statute of limitations;
>
> 2. a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

(A. 726 ¶ B) (bold in original).

A "Wrongful Act" means "any actual or alleged act, error, omission or breach

of duty by any Insured in the rendering of or failure to render Real Estate

Development Services."  (A. 731 ¶ II).  In turn, "Real Estate Development Services"

include "services performed by or on behalf of any Insured in the course of

improvement of real property acquired by the Insured, whether alone or as a part of

a partnership, joint venture, syndication, or other arrangement" such as "asset

management, property management, development consulting… with respect to both

acquired and non-acquired property."[1]  (A. 729 – 30 ¶ X).

The Policy lists a Retroactive Date of March 1, 2016.  (A. 721, Item 8).

---

[1] Colony does not dispute that the allegations in the underlying action involved Pine rendering Real Estate Development Services.

The Policy contains what is commonly referred to as a "prior knowledge" exclusion, that purports to preclude coverage for "any Claim..."

> A. arising out of a **Wrongful Act**...occurring prior to the **Policy Period** if, prior to the effective date of the first Architects & Engineers Professional Liability Insurance Policy[2] issued by the **Insurer** to the **Named Insured** and continuously renewed and maintained in effect prior to the **Policy Period**:

> 2. any **Insured** had a reasonable basis to believe that the **Insured** had committed a **Wrongful Act**, violated a disciplinary rule, or engaged in professional misconduct."

(A. 732 ¶ A).

The Policy also includes a provision that deems "[t]wo or more claims" arising out of one Wrongful Act or a series of related Wrongful Acts a single Claim. (A. 40 ¶ C).

**B.     The Underlying Parties' History and the Schneider Complaint**

The relationship between the parties to the Schneider Complaint has been long-running and familial. For over 35 years, Pine Management managed the Schneider Group's portfolio of various limited liability companies (the "LLC's"), which included residential real estate in New York City. (A. 718). Over the course of the long-standing relationship, the parties had disputes over issues, including the

---

[2] Pine has agreed that the exclusion intended to reference a "Real Estate Developers PROtect Professional Liability Insurance with Cyber Coverage Declarations", which is the Policy at issue, not an "Architects & Engineers Professional Liability Insurance Policy".

Schneider Group's regular gripe that Pine only provided the Schneider Group with information or documents concerning the LLC's upon request, and resolved them. (A. 352).

On July 26, 2019, the Schneider Group filed the Schneider Complaint. (A. 273 - 337). The Schneider Complaint alleges, among other things, that Pine engaged in self-dealing transactions, such as the payment of "management fees" and "construction management fees" from the LLC's to itself, in violation of the LLC operating agreements. (*See, e.g.,* A. 274 - 334 ¶¶ 1, 3, 5, 14, 271, 391, 394 – 415). Moreover, it alleges that Pine prevented the Schneider Group from exercising their rights as members of the LLC's, specifically by setting distributions, deciding on capital improvements, setting cash reverses for properties owned by the LLC's and approving certain loans to the LLC's without approval of a majority interest of the members of each LLC. (A. 275-76 ¶ 4). The Schneider Complaint further alleges that Pine failed to produce documents reflecting the financial condition and affairs of the LLC's pursuant to the Schneider Group's inspection rights under the Operating Agreements. (A. 330 – 34 ¶¶ 396 – 416). With these allegations as a predicate, the Schneider Complaint demands: (i) in both the First and Second Causes of Action, damages in an amount to be determined for Pine's alleged breach of the operating agreements (A. 305 ¶ 202; A. 313 ¶ 268); (ii) in the Third Cause of Action, an injunction enjoining Pine from taking actions "outside the ordinary course of

business" of the LLC's without majority member approval (A. 314 – 15 ¶ 281); (iii) in the Fourth Cause of Action, an injunction enjoining Pine from managing certain LLC's without consent; (iv) in the Fifth Cause of Action, a declaration that decisions outside the ordinary course of business under the operating requirements requires majority consent; (v) in the Sixth Cause of Action, damages in an amount to be determined for Pine's purported payments of management and construction fees to itself and making loans to the LLC's without majority approval; (vi) in the Seventh Cause of Action, a declaration that Pine cannot pay itself management and construction fees without majority consent; (vii) in the Eighth Cause of Action, damages in an amount to be determined for Pine's alleged breach of fiduciary duties purportedly owed to the Schneider Group; (viii) in the Ninth Cause of Action, an Order directing that Pine produce all documents regarding the LLC's financial conditions and affairs for the previous six years; and (ix) in the Tenth Cause of Action, an equitable accounting.

## C.    Colony's Wrongful Denial of Coverage

Pine immediately provided notice of the Schneider Complaint to Colony on July 29, 2019.  (A. 15 ¶ 45).  On August 20, 2019, Colony denied its duty to defend Pine for the Schneider Complaint.  (A. 15 ¶ 46).  Colony asserted that the "Claim" was first made prior to the Policy Period, when Pine received a July 17, 2018, letter from counsel for the Schneider Group (the "H&K Letter").  (A. 15 ¶ 46).  Colony

9

also cited Exclusion A.2 of the Policy as a basis to deny coverage because it believed that, in view of the H&K Letter, Pine had a reasonable basis to believe that it had a committed a Wrongful Act prior to inception of the Policy. (A. 15 ¶ 46). Finally, Colony asserted that the H&K Letter alleged Wrongful Acts allegedly committed by Pine prior to the Retroactive Date or related acts after the Retroactive Date that it deemed to be made on the date of the first Wrongful Act. (A. 15 ¶ 46).

## II. PROCEDURAL HISTORY

For three years, Pine disputed Colony's denial of its duty to defend Pine for the Schneider Complaint, and continued to keep Colony apprised of the underlying litigation and the amount of defense costs incurred by Pine. Colony did not commence any action seeking a declaration that the Schneider Complaint did not trigger its duty to defend. Instead, on March 24, 2022, having incurred defense costs exceeding the Policy limits, Pine filed the Pine Complaint. (A. 8 - 20). The Pine Complaint sought a declaration that Colony must defend Pine in the Schneider Action, as well as damages for Colony's breach of the Policy. (A. 19). On June 1, 2022, Colony filed its Answer and Counterclaim. (A. 117 – 135). Thereafter, on June 21, 2022, Pine filed its Answer to Colony's Counterclaim. (A. 180 – 193).

The parties appeared for an initial case conference before Hon. Mary Kay Vyskocil, U.S.D.J. on July 26, 2022, whereat (while not transcribed), the District Court cautioned Colony against filing a motion for judgment on the pleadings

10

because of the breadth of New York's duty to defend law and the exacting standards on such a motion. (*See, e.g.*, A. 4). Nevertheless, Colony filed its Fed. R. Civ. P. 12(c) motion on August 9, 2022 (the "Colony Motion"). (A. 197). Colony argued that the same three bases it asserted in coverage denial letter entitled it to the drastic relief sought by a Fed. R. Civ. P. 12(c) motion. (A. 223 - 236). The parties jointly requested a discovery stay pending a decision on the Colony Motion because discovery would be unnecessary if the Colony Motion was granted, or the issues would be streamlined if it was denied. (A. 6). The District Court denied the parties' joint request. (A. 6). Accordingly, the parties completed all discovery several months before the District Court ruled on the Colony Motion. (A. 6).

On March 20, 2023, the District Court issued the District Court Opinion granting the Colony Motion, concluding that Colony had no duty to defend or indemnify with respect to the Schneider Complaint. (A. 761 – 770). Pine timely filed its Notice of Appeal on April 17, 2023. (A. 782).

## SUMMARY OF ARGUMENT

I.     The District Court erred in granting the Colony Motion. The Court failed to conduct any analysis of New York's extremely broad duty to defend law,

11

and the corresponding burden that rests with an insurance company to show that a policy exclusion unequivocally precludes coverage.

II.     The District Court erred in applying the incorrect standard on a motion for judgment on the pleadings, and in making findings of fact that, as a matter of law, should be left to a trier of fact.

III.    The District Court erred in concluding that the H&K Letter constituted a pre-Policy "Claim", because the H&K Letter did not "demand" any monetary, non-monetary, or injunctive relief – certainly not one an insurance company could defend – and expressly stated that the Schneider Group sought a meeting in order to reach a "mutually satisfactory resolution" without litigation.

IV.    The District Court erred in concluding that Exclusion A.2 applied, because: the exclusion is ambiguous and should be construed against Colony; Pine did not have a subjective belief that it had committed a Wrongful Act; and no reasonable party in Pine's position would have objectively believed in the two weeks prior to the Policy effective date that a Claim was expected to arise.

V.     The District Court erred in applying a "related claims" provision to deem Wrongful Acts alleged in the Schneider Action occurring after the Retroactive Date as occurring on the date of the first alleged Wrongful Act, because that provision applies to "two or more Claims", whereas here, there is only one "Claim" – the Schneider Complaint – and because the District Court conducted no real

12

"relatedness" analysis, ignored independent Wrongful Acts occurring after the Retroactive Date, and disregarded clear issues of law.

## STANDARD OF REVIEW

The Second Circuit reviews "a judgment under Federal Rule of Civil Procedure 12(c) *de novo*." *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 178 (2d Cir. 2013) (citation omitted). In doing so, the Court must accept "the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Kirkendall*, 707 F.3d at 178. The Court must also assume all facts from the pleadings, any attached documents, and any matter of which the court can take judicial notice for the factual background of the case "to be true unless contradicted by more specific allegations or documentary evidence." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

## ARGUMENT

The allegations of the Schneider Complaint fall within the Policy's coverage grant. These allegations suggest, at a minimum, a reasonable possibility of coverage. And under New York law, the mere possibility that the allegations of an underlying complaint allege a covered loss triggers an insurance company's duty to defend. Accordingly, Colony's duty to defend has been triggered, and it must defend Pine against the allegations of the Schneider Complaint.

13

The District Court Opinion recognized that "a motion for judgment on the pleadings is 'an unusual procedural posture for a duty to defend case.'" (A. 764) (quoting *Suez Treatment Sols., Inc. v. ACE Am. Ins. Co.*, No. 1:20-CV-06082 (MKV), 2022 WL 954601, at *1 (S.D.N.Y. Mar. 30, 2022)). But after citing *Suez* for this logical principle, the District Court Opinion abandoned any analysis of the duty to defend. Indeed, the District Court did not analyze New York's broad duty to defend law <u>at all</u>. In fact, at various points, the District Court Opinion referred to "indemnity", a different and narrower standard than "duty to defend." But because the policy limits have been exhausted by Defense Costs Pine incurred in defending against the Schneider Complaint, indemnity was not at issue in the Colony Motion. Therefore, it is not at issue on this appeal.

By viewing this case through the improper lens, the District Court lost sight of <u>why</u> motions for judgment on the pleadings clash with a fulsome duty to defend analysis. On a motion for judgment on the pleadings, the allegations of a plaintiff's complaint are deemed admitted. *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989). Also, all inferences from the pleadings, appended documents, and any other materials of which a court may take judicial notice regarding the underlying claim, must be drawn in favor of the non-moving party. *See City of Pontiac Gen. Employees' Retirement Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011) (the

14

Court reviews "*de novo* a district court's grant of a defendant's motion to dismiss,[3] accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.")  Further, to avoid its duty to defend, an insurance company must show that the allegations of an underlying complaint fall exclusively within a policy exclusion.  *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997).  Paired with the admitted facts of Pine's Complaint, overcoming its duty to defend on a motion for judgment on the pleadings presents a monumental burden for an insurance company to overcome, and a burden that Colony did not meet.

Under New York law, the duty to defend is extremely broad; the facts of Pine's Complaint are deemed admitted; and Colony bears a heavy burden to show that an exclusion bars coverage.  The District Court Opinion's failure to analyze and apply these established standards led it to a legally untenable conclusion in granting Colony's Motion.  Accordingly, the District Court Opinion must be reversed.

## II.    NEW YORK'S BROAD DUTY TO DEFEND LAW COMPELS A FINDING OF THAT THE SCHNEIDER COMPLAINT IS A COVERED CLAIM.

An insurance company's duty to defend is exceedingly broad.  *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006); *Cont'l Cas. Co. v. JBS Constr.*

---

[3] Courts apply the same standard to evaluate a motion for judgment on the pleadings as they do on motions to dismiss. *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

*Mgmt., Inc.*, No. 09 CIV. 6697 (JSR), 2010 WL 2834898, at *2-4 (S.D.N.Y. July 1, 2010). Indeed, this duty "arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65 (1991). New York courts construe insurance policies liberally in favor of coverage, such that if "the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Cook*, 7 N.Y.3d at 137.

The exceedingly broad duty to defend is significantly broader than the duty to indemnify. *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984); *Int'l Bus. Machines Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 424 (2d Cir. 2002). If any of the facts alleged could be construed to set forth a claim that is possibly covered, "whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend." *Seaboard Sur. Co.*, 64 N.Y.2d at 310-11 (citation omitted) (emphasis added). The insurance company's duty to defend even groundless suits against its policyholder (like the Schneider Complaint), and even suits for which no indemnity may exist, have led New York courts to surmise that liability is, at its essence, also litigation insurance. *Seaboard Surety*, 64 N.Y.2d at 310.

16

Despite this bedrock duty to defend principle, the District Court Opinion mentioned it only in passing, effectively ignoring the broad duty that both New York law and the Policy itself place on Colony.  In doing so, the District Court Opinion also ignored the high burden placed on insurance companies to establish that an exclusion applies to exclude coverage.  *See Seaboard Sur. Co.*, 64 N.Y.2d at 311.  An insurance company must defend its policyholder unless it can meet the heavy burden of showing that an underlying complaint casts the pleadings wholly within a policy exclusion, "that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Frontier Insulation Contractors,* 91 N.Y.2d at 175; *Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*, 295 F. Supp. 2d 335, 338 (S.D.N.Y. 2003) (quoting *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co*., 91 N.Y.2d 169, 174 (1997) (complaint must cast pleadings wholly within policy exclusions for insurance company to avoid coverage)).  This extremely high burden "in practice, is rarely met." *Great Am. Ins. Co. v. Houlihan Lawrence, Inc*., 449 F. Supp. 3d 354, 365 (S.D.N.Y. 2020) (citing *Hotel Des Artistes, Inc. v. Transamerica Ins. Co*., No. 93 CIV. 4563 (SS), 1994 WL 263429, at *3 (S.D.N.Y. June 13, 1994)).

The Schneider Complaint falls within the Policy's coverage grant, which insures Pine against "Loss…that…results from a Claim first made and reported

17

during the Policy Period or Extended Reporting Period…arising out of a Wrongful Act committed before the end of the Policy Period and on or after the Retroactive Date. (A. 723). The Schneider Complaint is a "Claim", because it is a "civil proceeding … commenced by the service of a complaint…." (A. 726 ¶ B). That "Claim" arises from allegations of Wrongful Acts occurring after the Policy's Retroactive Date and before the end of the Policy Period. *See*, *e.g.* (A. 332 ¶ 408) (In 2018, "Pine Management refused to produce requested documents"); (A. 294 ¶ 117) ("On or about January 17, 2018," Pine attempted to amend certain operating agreements). Further, the Schneider Complaint demands damages, non-monetary, and injunctive relief. (A. 335-36). These allegations fit squarely within the Policy's broad coverage grant. (A. 723). Accordingly, the burden shifts from Pine to Colony to show that an exclusion bars coverage. *Euchner-USA, Inc. v Hartford Cas. Ins. Co.*, 754 F.3d 136, 142 (2d Cir. 2014) ("When an exclusion clause is relied upon to deny coverage, the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage") (*quoting Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444 (2002)).

The District Court Opinion disregarded Colony's heavy burden of establishing that Exclusion A.2 applies, and that "there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the

18

insured under any policy provision." *Frontier Insulation Contractors*, 91 N.Y.2d at 175. And under New York law, a court must apply a subjective/objective standard in analyzing a prior knowledge exclusion like Exclusion A.2. *See Liberty Ins. Underwriters, Inc. v. Corpina Piergrossi Overzat & Klar LLP*, 78 A.D.3d 602, 604 (1st Dep't 2010) (requiring that a court "consider the subjective knowledge of the insured and then the objective understanding of a reasonable [insured] with that knowledge" to apply a prior knowledge exclusion). Instead of conducting this analysis, the District Court merely concluded that Pine had subjective knowledge through the H&K Letter that it had committed a Wrongful Act, without accounting for the H&K Letter's precatory language and the proper context. *See Gil Enters., Inc. v. Delvy,* 79 F.3d 241, 246 (2d Cir. 1996) (precatory and ambiguous statements did "not rise to the level of a demand, because they objectively failed to put [Plaintiff] on notice of the drastic legal repercussions that could result from noncompliance.") And the District Court assumed in conclusory fashion that a property manager policyholder in Pine's position objectively would believe that a Claim might result. (A. 767-68). In short, the District Court performed no analysis of Colony's heavy burden. In doing so it misapplied New York's *Corpina* standard, and reached a conclusion unsupported by New York law.

Moreover, the H&K Letter triggers Exclusion A.2 only if the exclusion is subject to no other reasonable interpretation. *Frontier Insulation Contractors,* 91

N.Y.2d at 175.  The H&K Letter explicitly offers an equally (if not more) reasonable interpretation – that the Schneider Group wished to meet with the express intention of avoiding litigation, and, consistent with the parties' history, accordingly, avoiding a claim.  (A. 353).

    Had the District Court properly analyzed New York's broad duty to defend law, it would have found that the allegations of the Schneider Complaint trigger coverage under the Policy.  It further would have determined that Colony cannot meet its heavy burden of showing that a Policy exclusion applies to bar coverage. But because it did not perform this analysis, the District Court did not reach those conclusions, and in doing so committed reversible error.

    Similarly, by failing to consider that the duty to defend applies to the entire action, where an insurance company must cover the claim if one allegation triggers coverage, the District Court improperly concluded that independent Wrongful Acts post-dating the Retroactive Date are tethered to pre-Retroactive Date allegations was erroneous.

## III.    THE DISTRICT COURT MISAPPLIED THE STANDARD FOR RULING ON A MOTION FOR JUDGMENT ON THE PLEADINGS.

    In ruling on a motion for judgment on the pleadings, the district "court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party."  *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989).  This includes accepting "the well-pleaded material facts alleged in the

complaint ... as admitted." *Madonna*, 878 F.2d at 65 (citation and quotation omitted) (ellipses in original). *See also Util. Metal Rsch., Inc. v Generac Power Sys., Inc.*, 179 F. App'x 795, 797 (2d Cir. 2006); *Gumer v. Shearson, Hammill & Co., Inc.*, 516 F.2d 283, 286 (2d Cir. 1974). A district court cannot dismiss a complaint unless it is clear from the pleadings that the plaintiff can prove no set of facts entitling him to relief. *Madonna*, 878 F.2d at 65 (citation and quotation omitted). The District Court Opinion disregarded these fundamental rules, and in doing so committed reversible error.

On its own, an analysis of New York's duty to defend rule should have caused the District Court to deny the Colony Motion. But the procedural posture of the Colony Motion – a motion for judgment on the pleadings where all of Pine's allegations are accepted as true – amplifies the District Court's error. Accepting the allegations of the Pine Complaint as admitted – as they must be (*Madonna*, 878 F.2d at 65) – Pine had not received a demand for monetary, non-monetary, or injunctive relief from the Schneider Group prior to the Policy period. (A. 14 ¶ 40). Also, "prior to the filing of the Schneider Complaint, the Schneider Group explicitly represented to Pine that it wished to avoid costly litigation." (A. 14 ¶ 41). Coupled with the parties' history, Pine could not have possessed subjective or objective knowledge that a Claim would arise from the H&K Letter, and New York law requires such knowledge to apply an exclusion such as Exclusion A.2. *See Corpina*, 78 A.D.3d at

21

604 (requiring that a court "consider the subjective knowledge of the insured and then the objective understanding of a reasonable [insured] with that knowledge" to apply a prior knowledge exclusion.)  Taking the facts pleaded in Pine's Complaint as admitted (*Gumer*, 516 F.2d at 286), it follows that, under the *Corpina* standard, Pine had no objective knowledge that it had committed a Wrongful Act prior to the Policy Period or that litigation might be expected.  Therefore, Colony cannot meet its burden of demonstrating that Exclusion A.2 bars coverage.  *See Frontier Insulation Contractors*, 91 N.Y.2d at 175 (for exclusion to bar coverage, there must be no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision.)

The well-pleaded facts of the Pine Complaint render Exclusion A.2 inapplicable, particularly on a motion for judgment on the pleadings.  *See Madonna*, 878 F.2d at 65.  Under New York law and based on the plain language of the H&K Letter, Pine had no reasonable basis to believe that a Claim could arise be expected to arise from the H&K Letter.  Accordingly, in finding that Exclusion A.2 applied, the District Court disregarded New York precedent, erred, and the District Court Opinion should be reversed.

Also, in finding that alleged Wrongful Acts post-Retroactive Date "appear" to be related to alleged Wrongful Acts before the Retroactive Date, and by ignoring the inferences and implications of the allegation in the Schneider Complaint, the

District Court failed to apply the applicable standard on a motion for judgment on the pleadings, thereby committing reversible error.

## IV.  CONTRARY TO THE DISTRICT COURT OPINION, THE H&K LETTER DOES NOT CONSTITUE A "CLAIM" BECAUSE IT DID NOT DEMAND MONETARY, NON-MONETARY, OR INJUNCTIVE RELIEF.

The District Court further erred in finding that the H&K Letter constituted a "Claim" prior to inception of the Policy, adopting the same flawed premises set forth by the Colony Motion.  (A. 764 – 68).  According to the District Court, the H&K Letter "plainly" satisfies the Policy's definition of a "Claim" as a "written demand received by [Pine] for monetary, nonmonetary, or injunctive relief."  (A. 764 – 65).  But the H&K Letter <u>cannot</u> meet this definition without supposition and innuendo on the part of the reader.  Neither the express language of the H&K Letter nor relevant precedent within the Second Circuit and New York support the District Court's interpretation.[4]

At the outset, the District Court ignored the basic tenet that a "claim" "must relate to an assertion of legally cognizable damage, and must be a type of demand that can be defended, settled and paid by the insurer." *Evanston Ins. Co. v. GAB Bus. Servs., Inc.*, 132 A.D.2d 180, 185 (1st Dep't 1987).  In *GAB*, the court, in the

---

[4] The Colony Motion did not assert that the H&K Letter requested injunctive relief; therefore, that point is not at issue with respect to whether the H&K Letter is a "Claim".  (*See* A. 238 – 67).

context of a prior claims exclusion, concluded that a letter containing "statements of dissatisfaction with certain aspects of [the policyholder's] past performance, a demand for future performance in accordance with the contract, and a warning that failure to correct the deficiencies listed might result in cancellation of the contract for cause" did not constitute a "demand." *GAB*, 132 A.D.2d at 185. Further, while a claim may be something other than an actual lawsuit, it must be more than an accusation of wrongdoing or the mere threat of a future lawsuit. *In re Ambassador Grp., Inc. Litig.*, 830 F. Supp. 147, 155 (E.D.N.Y. 1993). The H&K Letter lacks the hallmark of a "claim." The Schneider Group contended that the operating agreements and relevant documents "[arguably] show" that some wrongdoing had occurred. (A. 341). At best, by the plain language of the H&K Letter, the Schneider Group requested a meeting to address their concerns, which is not something that Colony could defend, settle, or pay. *See GAB*, 132 A.D.2d at 185.

The H&K Letter certainly does not demand "monetary" relief as required under the Policy's definition of "Claim." The H&K Letter contains no allegations of damages the Schneider Group sustained; it simply states that Pine lacked authority to pay itself fees or fix its own compensation. (*See* A. 341-53). But the H&K Letter does not demand repayment of those fees or compensation. To rise to the level of a "Claim", the H&K Letter would have had to demand reimbursement of those fees, a request that the Schneider Group specifically declined to make. *See Purcigliotti v.*

24

*Risk Enter. Mgmt. Ltd.*, 240 A.D.2d 205, 206 (1st Dep't 1997) ("claim" is not merely an awareness of the possibility that some wrongdoing has occurred, but "an assertion of legally cognizable damage, and must be a type of demand that can be defended, settled and paid by the insurer.")  It was not until they filed the Schneider Complaint that the Schneider Group demanded reimbursement of the management and construction fees that Pine received.

Because the H&K Letter does not contain a demand for damages or other monetary relief, the District Court's reliance on S*eneca Ins. Co. v. Kemper Ins. Co.*, No. 02 CIV. 10088 (PKL), 2004 WL 1145830 (S.D.N.Y. May 21, 2004), *aff'd*, 133 F. App'x 770 (2d Cir. 2005), is misplaced.  The letter that the *Seneca* court found to be a claim alleged statutory violations and, more importantly, that the claimant "'sustained actual direct damages.'"  *Id*. at *5.  Such allegations go far beyond the meeting request and the Schneider Group's explicit desire to avoid litigation presented by the H&K Letter, making *Seneca* inapposite.

Further, the District Court Opinion tacitly conceded that the plain language of the H&K Letter contains no demand for monetary relief, as it based its conclusion on "the <u>implication</u> of the HK Letter is that counsel requested the meeting" to demand monetary damages or other relief.  (A. 790) (emphasis added.)  To the contrary, the H&K Letter expressly seeks a "mutually satisfactory resolution."  (A. 342; 353).  A "mutually satisfactory resolution" could mean something other than

"monetary" relief; it may not involve "relief" of any kind. *See* RELIEF, Black's Law Dictionary (11th ed. 2019) ("The redress or benefit, esp. equitable in nature (such as an injunction or specific performance), that a party asks of a court.") And even if the District Court Opinion was correct, an "implication" certainly does not rise to the level of a <u>demand</u>. The words have entirely different meanings,[5] despite the District Court's false equivalency. Analyzing whether a "Claim" has been made depends on the Policy definition and whether the language of the letter at issue satisfies that definition. Inferring what the Schneider Group intended to demand at a subsequent meeting runs afoul of proper policy interpretation, as well as the principal that on a motion for judgment on the pleadings, all inferences must be drawn in favor of the non-movant.[6] Additionally, on a motion to decide Colony's duty to defend Pine, this fact must be viewed in the light most favorable to coverage. *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003) (any ambiguity must be resolved against the insurance company and in favor of coverage.). The

---

[5] Demand means "an act of demanding or asking especially with authority; something claimed as due or owed." https://www.merriam-webster.com/dictionary/demand (last visited July 28, 2013.) Implication, on the other hand, means "something implied: such as [] a possible significance [or] suggestion." https://www.merriam-webster.com/dictionary/implication (last visited July 28, 2013.)

[6] Even if the Schneider Group intended to demand monetary damages or other relief at a future meeting, such demand would not qualify as a "Claim" unless it was in writing, because of the Policy requirement for a "written demand."

26

District Court Opinion went beyond its purview, viewing this fact in the light least favorable to coverage, and in doing so commited reversible error.

Nor does the H&K Letter demand nonmonetary relief. According to the District Court Opinion, the H&K Letter "requests non-monetary relief in the form of an accounting and demands ten categories of documents for inspection." This misconstrues the express language of the H&K Letter, which simply states that "New York law holds that a member of a limited liability company has the right to an equitable accounting under common law." (A. 345) (citing cases). The paragraph then unceremoniously ends. This statement seeks no relief from Pine. *See In re Ambassador Grp., Inc. Litig.*, 830 F. Supp. 147, 155 (E.D.N.Y. 1993). To infer that this statement of law constitutes a demand requires contorting the meaning and intent of the H&K Letter well beyond its plain language, a result not allowed under New York law. *See Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 265 (2011).

The Schneider Group's request for ten categories of documents similarly fails to demand non-monetary relief. That request is premised, in part, on the LLC's operating agreements, which provide members of an LLC with the right to request inspection of books and records at reasonable times and upon reasonable prior notice. That cannot constitute a demand for non-monetary relief, because that would lead to the nonsensical result that a claim would result every time a party requested

such access. Moreover, the record does not show that the Schneider Group previously requested these specific documents and that Pine had refused to provide them. In fact, the H&K Letter complains that Pine "does not produce documents on a regular or timely basis" and "only does so in reaction to a request" from the Schneider Group. But that is precisely what the operating agreements provide – inspection upon request. And both the H&K Letter and the Schneider Complaint acknowledge that Pine complied with previous requests. (A. 352). While the Schneider Group cites Pine's purported refusal to produce certain documents in March 2018, Pine stated only that it would not go back and create lists, and specifically identified documents it had provided that would answer the Schneider Group's specific inquiry. (A. 718).

The District Court Opinion relied on factually distinct, unpersuasive caselaw in adopting Colony's position. For example, the District Court Opinion cited to *Weaver v. Axis Surplus Ins. Co.,* 639 F. App'x 764, 766–67 (2d Cir. 2016) for the proposition that "a letter 'set[ting] forth [a] request under a claim of right, including [an] entitlement to the documents identified' is sufficient to put an insured 'on notice of the legal consequences of any failure to comply.'" (A. 789). In *Weaver*, the policyholder received a "letter" from the Maryland Attorney General's Office demanding that the policyholder cease certain actions, and threatening that the policyholder's "[f]ailure to respond may result in more formal legal action."

28

*Weaver*, 639 Fed App'x at 766. Here, the H&K Letter expressly stated that the Schneider Group wished to avoid further legal action. (A. 353). And certainly, a letter from a state Attorney General's office carries significantly more weight than a letter from counsel simply requesting access to books and records and seeking an amicable solution to someone's concerns. (A. 350 – 353). Further, in *Weaver*, the district court found that the Attorney General's letter "also demanded non-monetary relief that was equitable in nature because it requested that the recipient 'immediately cease all offers and sales of the Vendstar business opportunity to Maryland residents.'" *Weaver v. Axis Surplus Ins. Co.*, 13-CV-7374(SJF)(ARL), 2014 WL 550667, at *9 (E.D.N.Y. Oct. 30, 2014), *aff'd*, *Weaver*, 639 Fed App'x at 766. The H&K Letter made no similar demand.

Moreover, *Weaver* found that the Attorney General's letter contained no precatory language. The District Court Opinion shoehorned this same postulation into the H&K Letter, stating that it "explicitly mentions litigation." (A. 766; 790). But the District Court Opinion ignored that the H&K Letter only mentioned litigation in the context of the explicit precatory language of the Schneider Group wanting to <u>avoid</u> litigation. (A. 353) ("[W]e suggest that a meeting be scheduled to resolve the Schneider/Schwartz Group's concerns. We believe that a mutually satisfactory resolution of the issues is preferable to a costly and unnecessary litigation.") The District Court improperly ignored this language to deem the H&K

29

Letter a "Claim", thereby interpreting the H&K Letter beyond its plain language – an analysis anathema to New York law. *Baines v. Nature's Bounty (NY) Inc.*, CV 21-5330 (JS)(AYS), 2023 WL 2185603, at *2 (E.D.N.Y. Jan. 3, 2023), *report and recommendation adopted*, 21-CV-5330(JS)(AYS), 2023 WL 2662313 (E.D.N.Y. Mar. 28, 2023) (on motion to dismiss,[7] court should refrain from its own interpretation of documents and apply only plain-language reading of each document in the light most favorable to the plaintiff); *Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co., Inc.*, 16 N.Y.3d 257, 265 (2011) (court may not judicially rewrite language of document to reach result not compelled by the document's plain language.).

The H&K Letter's representation that the Schneider Group wished to avoid litigation is the very essence of precatory language. *See Gil,* 79 F.3d at 246 (precatory and ambiguous statements did "not rise to the level of a demand, because they objectively failed to put [Plaintiff] on notice of the drastic legal repercussions that could result from noncompliance."). The District Court Opinion mentioned but handwaves *Gil*, reaching the incorrect conclusion that the H&K Letter did not contain such precatory language. But in *Gil*, this Court determined that a "demand" is an "imperative solicitation for that which is legally owed." According to *Gil*, a

---

[7] Courts apply the same standard to evaluate a motion for judgment on the pleadings as they do on motions to dismiss. *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

letter containing some imperative language ("we are in need of some additional information") mixed with precatory language ("Please advise") was ambiguous, and could not put the policyholder on notice of legal repercussions for failure to comply. *Gil*, 79 F.3d at 246. Like the letter in *Gil*, the H&K Letter requests access to certain documents, pursuant to the terms of the operating agreements, that the Schneider Group wished to inspect, but also includes the undoubtedly precatory language that "a mutually satisfactory resolution of the issues is preferable to a costly and unnecessary litigation." (A. 353). This language cannot rise to the level of a non-monetary demand. *Gil*, 79 F.3d at 246. Failure to acknowledge this precatory language resulted in the District Court Order misinterpreting the holding of *Gil* and accordingly warrants reversal.

The District Court also focused improperly on the Schneider Group's use of the word "claims" in the H&K Letter, their reference to breaches of duties, and the reference to litigation and the hypothesis that the "claims" would survive pre-trial motion practice. The H&K Letter's vernacular reference to "claims" has no bearing on whether or not the H&K Letter constitutes a "Claim" as defined in the Policy. Moreover, as this Court recognized in *Windham Solid Waste Mgmt. Dist. v. Nat'l Cas. Co.*, 146 F.3d 131 (2nd Cir. 1998):

> "an accusation that wrongdoing occurred is not by itself a claim, *MGIC Indem. Corp.*, 797 F.2d at 288; *In re Ambassador Group*, 830 F.Supp. at 155; *Dillon, Hardamon & Cohen*, 725 F.Supp. at 1472; nor is a naked

> threat of a future lawsuit, *In re Ambassador Group*, 830
> F.Supp. at 155; *Hatco Corp.*, 801 F.Supp. at 1374; or a
> request for information or an explanation, *Hoyt v. St. Paul
> Fire & Marine Ins. Co.*, 607 F.2d 864, 866 (9th Cir.1979);
> *Dillon, Hardamon & Cohen*, 725 F.Supp. at 1469.  A
> claim requires, in short, a specific demand for relief."

*Windham*, 146 F.3d at 134.  The H&K Letter contains no such specific demand for relief.  And again, the H&K Letter's references to litigation actually mentioned the Schneider Group's desire to <u>avoid</u> litigation, a critical point missed by the District Court Opinion.

Additionally, the District Court failed to examine whether the H&K Letter constituted a "Claim" against the proper procedural backdrop of a motion for judgment on the pleadings.  Neither the allegations in the Pine Complaint nor the express language of the H&K Letter support the District Court's contrary interpretation.  The Pine Complaint alleges that "[p]rior to the Policy Period, filing of the Schneider Action, Pine had received no demand for monetary, non-monetary, or injunctive relief from the Schneider Group."  (A. 14 ¶ 40).  Further, the Pine Complaint alleges that "prior to the filing of the Schneider Complaint, the Schneider Group explicitly represented to Pine that it wished to avoid costly litigation."  (A. 14 ¶ 41).  On a motion for judgment on the pleadings, these facts must be deemed admitted.  *Madonna*, 878 F.2d at 65.

The District Court Opinion cited to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) for the proposition that "[t]hreadbare recitals of the elements of a cause of

32

action, supported by mere conclusory statements, do not suffice." But *Iqbal* also stands for the proposition that the Court "must accept as true all of the allegations contained in a complaint." *Iqbal*, 556 U.S. at 678. Whether Pine received a demand for relief from the Schneider Group is a question of fact, and therefore unripe for judgment on the pleadings. *See Great Am. Ins. Co. v. Houlihan Lawrence, Inc.,* 449 F. Supp. 3d 354, 372 (S.D.N.Y. 2020) ("a factual dispute renders a judgment on the pleadings for [the insurance company] improper and gives rise to [the insurance company's] duty to defend") (*citing Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,* 252 F.3d 608, 619 (2d Cir. 2001)); *Actava TV, Inc. v. Joint Stock Co. "Channel One Russia Worldwide,"* No. 18-CV-06626 (ALC), 2023 WL 2543070, at *5 (S.D.N.Y. Mar. 15, 2023) ("[W]here a question [of fact] is in dispute, it [is] improper for the district court to answer it on a motion for dismissal on the pleadings… [t]herefore, the Court, at this juncture, may not use a motion for judgment on the pleadings to weigh disputed factual allegations.") (first and second alterations in original) (quotation and citation omitted.) That the Schneider Group represented to Pine that it wished to avoid litigation is also a question of fact, and accordingly also improperly decided by the District Court. *Houlihan Lawrence*, 449 F. Supp. 3d at 372.

The H&K Letter made no demand for monetary or nonmonetary relief against Pine that could be defended, settled, or paid by Colony. Instead, it made vague

assertions about points of law and offered a meeting between the parties to address the issues to their mutual benefit.  Therefore, the H&K Letter does not satisfy the Policy's definition of a "Claim".  Accordingly, the District Court's finding to the contrary ought to be reversed.

## V.     THE DISTRICT COURT ERRED IN FINDING EXCLUSION A.2 BARRED COVERAGE.

The District Court also erred in concluding that Exclusion A.2, a purported "prior knowledge" exclusion, obviates Colony's duty to defend Pine for the Schneider Complaint.  In reaching its holding, the District Court failed to consider the actual language of Exclusion A.2, which at least one Federal Circuit Court has deemed ambiguous.  The District Court also ignored a foundational principal of insurance policy construction, specifically, that exclusions must be construed strictly against an insurance company and in favor of coverage.  Finally, the District Court misapplied the standard that New York courts apply when examining the applicability of a prior knowledge exclusion.

### A.     The District Court Misinterpreted the Language of Exclusion A.2

The District Court quoted a portion of Exclusion A.2 that states there is no coverage for a Claim if, prior to the Policy effective date, Pine "had a reasonable basis to believe that [it] had committed a Wrongful Act." A. 767.  The District Court then determined that, based on the H&K Letter, Pine was both subjectively and objectively aware that Pine "had committed a Wrongful Act" prior to inception of

34

the Policy. However, the District Court analyzed whether Pine knew that the Schneider Group had <u>alleged</u> in the H&K Letter that Pine had committed a Wrongful Act. The District Court did so by emphasizing that the definition of a "Wrongful Act" includes an "alleged" act, error, or omission, or breach of duty. According to the District Court, because the H&K Letter alleged that Pine had committed a Wrongful Act, Pine should have expected that a Claim might manifest.

But the District Court misconstrued by omission the plain language of Exclusion A.2, brushing aside of the remainder of the exclusion. When read as a whole, Exclusion A.2 precludes claims where Pine had a reasonable basis to believe that it actually "had committed" some wrongdoing, not claims where it had a reasonable basis to believe it had been charged with some wrongdoing, prior to the Policy's effective date. Exclusion A.2 actually provides:

> This Policy does not apply to any **Claim**…"

>> A. arising out of a **Wrongful Act**…occurring prior to the **Policy Period** if, prior to the effective date [of the Policy]

>> 2. Any **Insured** had a reasonable basis to believe that the **Insured** <u>had committed</u> a Wrongful Act, <u>violated</u> a disciplinary rule, or <u>engaged</u> in professional misconduct.

(A. 34) (emphasis added). The word "had" modifies each of the three verbs in the sentence – committed, violated, and engaged – to make them past perfect tense. Additionally, the last two categories of wrongdoing– the violation of a disciplinary rule or some professional misconduct – do not rest on a reasonable belief of an

"allegation" of wrongdoing, but a reasonable belief of "actual" wrongdoing. The canons of construction dictate that the meaning of a particular term in a clause must be read and considered in relation to the other words with which it is grouped. *See Wojchowski v. Daines*, 498 F.3d 99, 108 fn. 8 (2d Cir. 2007) ("The traditional canon of construction, *noscitur a sociis*, dictates that words grouped in a list should be given related meaning."). Therefore, under the plain language of the Policy, only claims where Pine reasonably believed it <u>had</u> committed an alleged act are precluded by Exclusion A.2.

Elsewhere in the Policy, Colony acknowledged the distinction between Wrongful Acts that Pine "actually" committed and those it "allegedly" committed. In the Policy's Definitions, in seeking to limit coverage for a Subsidiary, Colony stated that "this policy will only apply to Wrongful Acts committed <u>or allegedly committed</u>….") (emphasis added). (A. 731 ¶ FF). Had Colony intended for Exclusion A.2 to preclude coverage for Pine's knowledge of Wrongful Acts it "allegedly committed", it would have inserted those words after "committed" within the exclusion. Colony's omission of those key words from Exclusion A.2 reveals its true intent. *See Great Am. Ins. Co. v. AIG Specialty Ins. Co.*, No. 20-cv-4596 (DLC), 2021 WL 1268450, at *4 (S.D.N.Y. April 6, 2021) (in the duty to defend context, and in considering a subsidiary coverage limitation, as in Section III.FF of the Policy here, the District Court noted that the "presence of the term 'related acts'

36

elsewhere in the AIG Policies makes its absence in the subsidiary limitation noteworthy."). Accepting Colony's reading of Exclusion A.2 would extend by implication the exclusion that Colony itself wrote into the Policy – a result forbidden by New York law. *Belt Painting Corp.*, 100 N.Y.2d at 383.

Had Colony intended to exclude from coverage any Claim of which Pine had a reasonable basis to believe that an alleged Wrongful Act might be expected to result in a "Claim", rather than a belief by Pine that it "had committed" some wrongdoing, then Colony should have used some version of the more typical "prior knowledge" exclusions. *See, e.g., Bryan Bros., Inc. v. Cont'l Cas. Co*., 660 F.3d 827, 830-31 (4th Cir. 2011) ("had a basis to believe that any such act or omission [on which the claim is based], or interrelated act or omission, might reasonably be expected to be the basis of a claim."); *Schwartz Manes Ruby & Slovin, L.P.A. v. Monitor Liab. Managers, LLC*, 483 F. App'x 241 (6th Cir. June 15, 2012) ( "prior to the inception date of the first Lawyers' Professional Liability Insurance Policy issued … the Insured did not know, or could not reasonably foresee that such Wrongful Act might reasonably be expected to be the basis of a Claim"); *Colony Ins. Co. v. Kuehn*, No. 2:10-cv-01943, 2012 WL 4472038 (D. Nev. Sept. 25, 2012) (exclusion for any claim "based on or directly or indirectly arising from a 'Legal Service' rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the 'Legal Service' could give rise to a claim");

37

*Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300 (10th Cir. 2011) ("as of the inception date no date no partner, principal, officer, director, or member of the Insured was aware of any Wrongful Act, fact, circumstance or situation that he or she knew or [c]ould reasonably have foreseen might result in a Claim under this Policy"). Colony did not employ a typical prior knowledge exclusion, and must live with the exclusionary language it did use in the Policy it wrote.

The plain language of Exclusion A.2 undermines Colony's reading of the Policy that the District Court adopted. But at a minimum, Pine's interpretation of Exclusion A.2 is reasonable. This creates an ambiguity in the Policy language, because under New York law "ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002); *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 N.Y.3d 675, 680 (2015) (a policy is ambiguous "where its terms are subject to more than one reasonable interpretation."). Indeed, the Court of Appeals for the Fifth Circuit held that identical policy language is ambiguous. *See OneBeacon*

*Insurance Co. v. T. Wade Welch & Associates*, 841 F.3d 669 (5th Cir. 2016).[8]  Such

an ambiguity created by Colony must be resolved in Pine's favor.  *See Andy Warhol*

*Found. for the Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999)

("the ambiguities in the policy ordinarily are construed in favor of coverage and

against the insurer, because as the drafter of the policy the insurer is responsible for

the ambiguity").

The District Court's failure to consider whether Exclusion A.2 applied to bar

coverage for the Schneider Complaint under the actual policy language constitutes

reversible error.

### B.     The District Court Improperly Construed Exclusion A.2 Against Pine.

The duty to defend is separate and distinct from the duty to indemnify.

*Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985);

*Atlantic Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 252

(S.D.N.Y. 2013), *aff'd sub nom. Atlantic Cas. Ins. Co. v Greenwich Ins. Co.*, 548 F.

App'x 716 (2d Cir. 2013).  It is a broader duty, with the obligation to furnish a

---

[8] The *OneBeacon* court also found that applying the exclusion literally would exclude from coverage "every single thing an attorney does or does not do, wrongful or not" and would "render[] the coverage illusory and [would be] facially absurd."  *OneBeacon*, 841 F.3d at 676-677.  Under New York law, an insurance policy cannot be construed to render coverage illusory.  *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 361 (1974).  Colony's interpretation of its own Policy is facially absurd, and the District Court Opinion's adoption of that interpretation should be reversed.

defense "heavy indeed." *Servidone*, 64 N.Y.2d at 424. The duty to defend is

triggered even if only a reasonable possibility exists that a policyholder has suffered

a covered loss. *Cook*, 7 N.Y.3d at 137; *Cont. Cas. Co. v JBS Const. Mgt., Inc.*, 09

CIV. 6697 (JSR), 2010 WL 2834898, at *2-4 (S.D.N.Y. July 1, 2010). And if any

of the claims alleged by an underlying complaint arguably fall within a policy's

coverage, the insurance company must defend the entire action. *Town of Massena*

*v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002); *Euchner-*

*USA, Inc.*, 754 F.3d at 141.

New York courts interpret exclusionary provisions strictly and narrowly,

resolving any question in favor of coverage. *Belt Painting Corp* 100 N.Y.2d at 383.

Exclusions "are not to be extended by interpretation or implication, but are to be

accorded a strict and narrow construction." *Seaboard Sur.*, 64 N.Y.2d at 311. *See*

*also Belt Painting Corp.*, 100 N.Y.2d at 377. The District Court Opinion turned this

principle on its head, extending Exclusion A.2 by interpretation and implication.

This impermissible broadening of the exclusion to bar coverage – despite the express

language of the H&K Letter – cannot stand under New York law.

### C. The District Court Misapplied the Standard Used to Analyze a "Prior Knowledge" Exclusion.

New York courts use a subjective-objective standard to analyze an insurance

policy's prior knowledge exclusion. *Liberty Ins. Underwriters, Inc. v. Corpina*

*Piergrossi Overzat & Klar LLP*, 78 A.D.3d 602, 604 (1st Dep't 2010). This standard

requires that a court "consider the subjective knowledge of the insured and then the objective understanding of a reasonable [insured] with that knowledge." *Corpina*, 78 A.D.3d at 604 (citation omitted). Under *Corpina*, the "first prong requires the insurer to show the insured's knowledge of the relevant facts prior to the policy's effective date, and the second requires the insurer to show that a reasonable [policyholder] might expect such facts to be the basis of a claim." *Corpina*, 78 A.D.3d at 604-05.

Even were the Court to find that Pine had subjective knowledge of a Wrongful Act prior to the Policy period, Colony cannot meet its burden of showing that Pine had objective knowledge of the same. No reasonable policyholder would expect a claim to arise from the H&K Letter because the Schneider Group expressly stated its desire to avoid a claim. (A. 14 ¶¶ 41; 342; 353). *Corpina*, 78 A.D.3d at 604-605. Accordingly, the District Court should have concluded that Colony's Motion fails under the *Corpina* standard. *See also Schlather, Stumbar, Parks & Salk, LLP v. One Beacon Insurance Co.*, No. 5:10-CV-0167 NPM/DEP, 2011 WL 6756971 (N.D.N.Y Dec. 22, 2011) (although policy's prior knowledge provision excluded indemnity, because the four corners of the underlying complaint alleged a potentially covered loss, the insurance company had to defend policyholder because the possibility of coverage existed.) Of course, because the District Court did not analyze New York's duty to defend law, this analysis is absent from the District Court Opinion.

41

Under the *Corpina* standard, Pine did not have knowledge of the facts demonstrating that it had committed a Wrongful Act prior to inception of the Policy. For example, the LLC's operating agreements, pursuant to which Pine had been operating for years, granted Pine broad discretion in its duties as manager with respect to ordinary course, except with respect to "finance[ing] or refinancing] any real estate owned by the Company, acquir[ing] new or additional real estate, or sell[ing] any real estate owned by the Company". (A. 438-39). The LLC operating agreements also narrowly limited any liability to the members. Specifically, Pine was entitled to exercise its business judgment in managing the LLC's business, operations and affairs, and its liability was limited for any mistakes of fact or judgment or doing any act or failing to do any act "[u]nless fraud, deceit, gross negligence, willful misconduct or a wrongful taking shall be proved by a non-appealable court order, judgment, decree or decision." (*See, e.g.,* A. 439 ¶ 8.4). Nowhere in the H&K Letter did the Schneider Group allege misconduct approaching that level; hence, a reasonable person would not believe a claim would be forthcoming where a basis for liability had not been asserted. Further, Pine was only obligated to provide the books and records to members "at reasonable times upon reasonable prior notice." (A. 344). Despite the hyperbole in the H&K Letter, the Schneider Group was exercising its right to inspect on notice. (A. 341). Pine had previously supplied requested documents (*See* A. 341; 718), and expressed its

intent to continue to do so, which one would expect to satisfy the Schneider Group's "concerns" (A. 356 – 57; 379 – 80; 388). Pine had no subjective knowledge it had done something wrong, because Pine had complied with these very requests from the Schneider Group in the past.

Second, under the full circumstances, a reasonable policyholder providing asset and property management services would not expect that the facts as known by Pine two weeks prior to the Policy effective date would manifest in a claim. Mere knowledge of "some consequences" of an act "is inconsequential… knowledge of the banality that actions have consequences" does not satisfy the objective standard of the "prior knowledge" test. *Corpina*, 78 A.D.3d at 607; s*ee also*, *Hartford Steam Boiler*, 2011 WL 1899392, at *10 (although "benefit of hindsight makes it easy to speculate" that policyholder should have anticipated litigation, "there is a difference between expecting litigation—believing that it is likely to occur—and knowing that litigation is within the realm of possibility" and knowledge only of possibility of litigation was not enough for insurance company to avoid coverage).

Many facts here raise genuine issues regarding what a "reasonable person" would believe under these circumstances. First, Pine's counsel deemed the accusations in the H&K Letter "baseless" and expressly stated that Pine had "never participated in an unlawful related party transaction and ha[d] historically responded to requests for documents and information promptly." (A. 356). The Schneider

43

Group made abundantly clear in the H&K Letter that they intended to avoid "unnecessary" litigation and reach a "mutually satisfactory resolution" of their concerns. (A. 353). Additionally, this was a dispute among family with 35 years of history, and one would expect to resolve differences amicably. (A. 356; 714). Further, Pine received the H&K Letter two weeks before the Policy effective date and was attempting to understand the Schneider Group's intent; indeed, Pine's counsel needed "some clarity as to [the] objective" at a meeting. (A. 357). Moreover, Pine had been responding to the Schneider Group's scattershot requests for documents. (A. 356). It believed that by agreeing to provide all books and records for inspection, the Schneider Group would be satisfied, as they always had been. Perhaps in the weeks and months _after_ Policy inception, when the Schneider Group complained that the documents made available were insufficient and that other documents were missing and upped their rhetoric, a reasonable person then might think that the Schneider Group might actually assert a claim. (A. 368) (stating that "the [Schneider Group] is ready, willing and able to commence an action" and using the word "demand" for the first time); (A. 392) (referring to missing documents). But that inference cannot be drawn from the H&K Letter sent immediately prior to the Policy effective date.

The District Court Opinion disregarded the plain language of the H&K Letter and the full context of the families' dealings with each other to incorrectly conclude

44

that Pine had objective knowledge of a Wrongful Act prior to the Policy period. Even if Pine had possessed subjective knowledge of a Wrongful Act prior to the Policy period – which it did not – the express representations of the H&K Letter would lead any reasonable policyholder to believe that the Schneider Group would not pursue a Claim. *Corpina*, 78 A.D.3d at 607. [9] The District Court's strained finding otherwise is incorrect, and should be reversed.

The District Court's reliance on *N. River Ins. Co. v. Leifer*, No. 21-CV-7775, 2022 WL 1210847 (S.D.N.Y. 2022) was improper. There, an attorney failed to file an answer, ultimately resulting in a default judgment against a client. Critical to the court's determination was that "failing to file an answer is *prima facie* evidence of negligence"; therefore, "a reasonable attorney would certainly anticipate that if no answer was filed at all, there would be some possibility of a future malpractice claim, especially because a default judgment had been entered…and the [policyholder] had been chastised for…the[] failure to adequately oppose the motion for default judgment." *Leifer*, 2022 WL 1210847, at *4. The facts here do not rise to such an

---

[9] Moreover, the *Corpina* court affirmed a lower court decision denying summary judgment to the insurance company, because a fact question existed as to whether attorneys who had missed a deadline for filing an administrative claim had a reasonable basis to foresee that a former client would file a malpractice claim. *See also Coregis Insurance Co. v. Goldstein*, 32 F. Supp. 2d 508 (D. Conn. 1998) (denying summary judgment based on numerous fact issues, including attorney's claimed lack of knowledge of statute of limitations, despite client reminders of the need to file a lawsuit, and the client threatening "appropriate action" if a lawsuit had not been filed).

extreme level.  Pine had discretion under the LLC's operating agreements, and a fact question exists as to the "ordinary course" between the parties.  And the H&K Letter lacked any demand; was premised upon a familial relationship; followed Pine's previous provision of documents upon request and Pine's agreement to permit further inspection of the books and records; and expressed a desire to resolve "concerns" through a "mutually" agreeable resolution in order to avoid "unnecessary" litigation.  This forms an abundant basis for a reasonable entity in Pine's position to believe at that time that a Claim would not result from the H&K Letter.

The District Court Opinion misinterpreted Exclusion A.2.  It also improperly broadened Exclusion A.2 and construed it in favor of Colony and against Pine, in clear contradiction of New York law.  And it misapplied the applicable standard for analyzing the Policy's prior knowledge exclusion.  For these reasons, the District Court erred, and the District Court Opinion should be reversed.

## VI.   THE DISTRICT COURT ERRED IN HOLDING THAT ALL OF THE ALLEGED WRONGFUL ACTS IN THE SCHNEIDER COMPLAINT PREDATE THE RETROACTIVE DATE.

The District Court Opinion's finding that the alleged wrongful acts in the Schneider Complaint predate the Policy's Retroactive Date further emphasizes the error inherent to deciding this case on a motion for judgment on the pleadings.  The District Court disregarded two allegations in the Schneider Complaint post-dating

the Retroactive Date that are not related to alleged Wrongful Acts prior to the Policy's Retroactive Date: that Pine attempted to amend the operating agreement on or about January 17, 2018; and that Pine refused to provide books and records on March 3, 2018.  Because these facts, as alleged, post-date the Policy's Retroactive Date, and are not related to Wrongful Acts that pre-date the Policy's Retroactive Date, the District Court Opinion is incorrect and should be reversed.

The District Court based its conclusion on the Policy's "related claims" provision, which provides:

> C.    Multiple Wrongful Acts, **Claims** or Claimants
>
> Two or more **Claims** arising out of a single **Wrongful Act,** or any series of related **Wrongful Acts,** will be considered a single **Claim.** Each **Wrongful Act,** in a series of related **Wrongful Acts,** will be deemed to have occurred on the date of the first such **Wrongful Act.**

(A. 769) (quoting Policy I.A.1.).  According to the District Court, the Schneider Group alleged "a long history of mismanagement by Pine", including allegations pre-dating the March 1, 2016, Retroactive Date; therefore, by operation of Section I.A.1., the specific allegations of misconduct occurring after the Retroactive Date were "related" to the pre-Retroactive Date allegations and deemed to occur before the Retroactive Date.  However, the District Court overlooked that the related claims provision, by its very terms, applies to deem <u>two or more claims</u> a single claim, which claim will be considered first made at the time of the first Wrongful Act,

47

whether it be a single act or a series of related acts. This provision does not apply to <u>one</u> "Claim" – here, the Schneider Complaint.[10]

Indeed, to allow a party to deem all Wrongful Acts in a single complaint one Wrongful Act occurring prior to a retroactive date, would parse the duty to defend and violate well-established New York rule that so long as a <u>single</u> allegation of an underlying action is potentially covered, an insurance company has a duty to defend the "entire action." *Am. Home Assurance Co. v. Port Auth. of N.Y. and N.J.*, 66 A.D.2d 269, 277 (1st Dep't 1979) ("[I]f various grounds are alleged, some within and some without the coverage of the policy, the insurer is bound to undertake the defense of the action on behalf of its assured."); *Mendes & Mount v. Am. Home Assurance Co.*, 97 A.D.2d 384, 385 (1st Dep't 1983) ("[The] duty to defend … extends to a defense of the *entire action*" (alteration and emphasis added)); *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.* 98 N.Y.2d 435, 443, 779 N.E.2d 167, 170, 749 N.Y.S.2d 456, 459 (2002) ("If any of the claims against [an] insured arguably arose from covered events, the insurer is required to defend the entire action." (alteration in the original)); *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175, 690 N.E.2d 866, 869, 667 N.Y.S.2d

---

[10] In the only case the District Court cited for its analysis, *Nomura Holdings America, Inc. v. Fed. Ins. Co.*, 629 F. App'x 38, 40 (2d Cir. 2015), this Court looked to the underlying facts between multiple complaints to determine whether two or more separate claims were related and when they would be deemed first made.

982, 985 (1997) ("If any of the claims against the insured arguably arise from covered events, the insurer is required to defend *the entire action*." (emphasis added)); 14 Couch on Ins. § 200:25 ("[A]n insurer's duty to defend extends to the entire action, which includes covered, potentially covered, and uncovered allegations within the claim."). It is therefore the Schneider Complaint as a whole that determines an insurance company's duty to defend – not the individual claim.

Further, the District Court Opinion made findings of fact in ruling on the relatedness of alleged Wrongful Acts before and after the Policy's Retroactive Date – an inappropriate result on a motion for judgment on the pleadings. *See Sheppard v. Beerman*, 18 F.3d 147, 153 (2d Cir. 1994). The District Court Opinion (somewhat sharply) posited that Pine's attempt to amend the Operating Agreement "appears similarly related to the alleged history of Pine's self-aggrandizement and self-dealing." (A. 770). It is axiomatic that the appearance of a relation cannot be decided as a matter of law. As the District Court Opinion recognized, the standard must be "whether the underlying claims are based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events." *Nomura Holding America, Inc. v. Fed. Ins. Co.*, 629 F. App'x 38, 40 (2d Cir. 2015) (citation omitted) (emphasis added.) The standard cannot be whether the underlying claims appear to be related, because that necessarily constitutes a finding

49

of fact. And a court making factual findings – as the District Court did here – is appropriate neither on a motion for judgment on the pleadings (*Sheppard*, 18 F.3d at 153) nor on a motion to determine an insurance company's duty to defend. *Seaboard Sur. Co.*, 64 N.Y.2d at 312 (1984) ("A declaration that there is no obligation to defend could now properly be made <u>only if it could be concluded as a matter of law</u> that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy") (emphasis added) (parentheticals in original).

Further, the District Court Opinion contradicted the allegations of the Schneider Complaint. The District Court Opinion stated that "[o]ne allegation addresses Pine's refusal to provide records or to permit inspection of documents in March 2018, but the Complaint alleges a prior history of withholding similar information." (A. 770) (citing Schneider Complaint at ¶¶ 406–16). But the Schneider Complaint does not allege a prior history of withholding similar documents. In addition, the record contains no evidence that Pine had refused to provide the documents at issue prior to 2018. On the contrary, the Schneider Complaint alleges that on prior occasions, "Pine Management produced documents only after one or more of the Plaintiffs requested such documents." (A. 110). These two allegations are fundamentally different. The allegation cited by the District Court Opinion alleges that Pine refused to provide records. The allegation glossed

50

over by reference in the District Court Opinion alleges that Pine <u>did</u> provide records in the past, after such documents were requested.  The Schneider Complaint itself draws this distinction with the introductory phrase "[a]t other times…"  Such wording gives credence to the fact that the Schneider Group recognized that Pine's refusal to produce requested documents in March, 2018 differed in kind and result from previous dealings between the parties.

Further, as the Schneider Complaint alleges, each of the LLC's stands on its own, with a separate operating agreement (A. 289 ¶ 83) that relates to different primary assets (i.e., buildings with a different numbers of units) (A. 289 ¶¶ 86 - 88).  This is important with respect to the Schneider Group's allegations that Pine unreasonably increased cash reserves and reduced distributions.  Reserves are set for the property owned by each LLC, and those "can vary based on a variety of conditions, including, but not limited to, market conditions, the physical condition of the property, the need or desirability for capital improvements, debt maturity dates, etc."  (A. 399 – 400).  Similarly, "[d]istributions are a relative function of revenue, expenses, reserve balances, debt, etc." *Id*. Therefore, decisions made as to reserves and distributions were done on a granular property-by-property – and at times on an annual, unit-by-unit – basis based on the specific needs of the building or unit at issue.  And each of these decisions was made annually, based on current information.  Pine's actions with regards to one particular entity – and on a year-by-

51

year basis – are thus entirely divorced from those undertaken as to another entity. The District Court ignored these points, which, reasonably interpreted, demonstrates that the alleged Wrongful Acts are not part of series of related Wrongful Acts.

At the very least, these discrepancies raise the possibility of coverage under the Policy, and in such a situation Colony must defend Pine. *Fitzpatrick*, 78 N.Y.2d at 65. The District Court Opinion misinterpreted both the facts and the law, and should be reversed.

## CONCLUSION

At this stage of this litigation, as a matter of law the H&K Letter does not constitute a Claim. It demands no monetary, non-monetary, or injunctive relief from Pine. Under New York's broad duty to defend law, Colony must defend Pine if the allegations of the underlying complaint allege even a possibility of coverage under the Policy. And under New York's *Corpina* standard, Pine had no knowledge of any alleged Wrongful Acts prior to the Policy period, and the alleged Wrongful Acts themselves do not pre-date the Policy period. For these reasons, the Court should reverse the District Court Opinion and the judgment and enter judgment in favor of Pine, finding that Colony has a duty to defend Pine in the Schneider Complaint.

July 28, 2023                    Respectfully submitted,

                                 /s/ Dennis J. Nolan
                                 Dennis J. Nolan
                                 John M. Leonard
                                 ANDERSON KILL PC
                                 1251 Avenue of the Americas
                                 New York, NY 10020
                                 (212) 278-1000

                                 *Attorneys for Plaintiff-Counter-*
                                 *Defendant-Appellant Pine*
                                 *Management, Inc.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure Rule 32(a)(7)(B), I hereby certify that this brief contains 12,807 words, as counted by Microsoft Word, excluding the items that may be excluded under Federal Rule 32(a)(7)(B)(iii). This brief uses a proportionally spaced typeface, Times New Roman, and the size of the typeface is 14 points, in compliance with Rules 32(a)(5)(A) and (a)(6).

/s/ John M. Leonard

July 28, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July 2023 a true and correct copy of the foregoing Brief of Appellant was served on all counsel of record in this appeal via CM/Dkt. pursuant to Local Rule 25.1(h)(1) and (2).

/s/ John M. Leonard

# SPECIAL APPENDIX

## TABLE OF CONTENTS

PAGE

Memorandum Opinion and Order of the Honorable Mary Kay
   Vyskocil, dated March 20, 2023 ................................. SPA-1

Judgment, dated March 21, 2023 .................................... SPA-11

**SPA-1**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _3/20/2023_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PINE MANAGEMENT, INC.,

                Plaintiff,

      -against-

COLONY INSURANCE COMPANY,

                Defendant.

---

1:22-cv-02407 (MKV)

**MEMORANDUM OPINION
AND ORDER GRANTING
MOTION FOR JUDGMENT
ON THE PLEADINGS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Pine Management, Inc. ("Pine") seeks coverage from Defendant Colony Insurance Company ("Colony") under a professional liability insurance policy for an underlying lawsuit against Pine. Colony moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), contending that the underlying lawsuit falls entirely outside of the scope of coverage provided by the Colony Policy. For the following reasons, the motion is GRANTED.

**BACKGROUND**[1]

**I.        The Underlying Litigation**

Pine manages, develops, and acquires rental apartment buildings. Complaint ¶ 2 ("Compl.") [ECF No. 1]. On July 26, 2019, Jerome Schneider filed a complaint ("the Schneider Complaint") in New York state court on behalf of the members of ten Limited Liability Companies ("LLCs") managed by Pine, asserting claims against Pine and others ("the Schneider Action"). Compl. ¶¶ 28, 29. The Schneider Complaint alleges ten causes of action, including breach of contract, breach of fiduciary duty, inspection of books and records, and an accounting. *See* Compl.

---

[1] The facts are taken from the Complaint, and for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**SPA-2**

¶ 29; Compl. Exhibit 2 ("Schneider Compl.") [ECF No. 1-2].  The Schneider Complaint seeks

damages, in addition to injunctive and declaratory relief.  *See* Schneider Compl.

The first exhibit attached to the Schneider Complaint is a July 17, 2018 letter from Michael

Geller of the law firm Holland & Knight ("HK Letter").  *See* Answer Exhibit 1 ("HK Letter")

[ECF No. 11-1].[2]  The HK Letter "advise[d] [Pine] of claims by the Schneider/Schwartz Group

against Pine."  *See* HK Letter 1.

## II.    The Colony Policy

Pine provided notice of the Schneider Complaint to Colony under a Real Estate Developers

PROtect Professional Liability Insurance policy ("the Colony Policy" or "the Policy"), with a

Policy Period of August 1, 2018 to December 1, 2019, and a Retroactive Date of March 1, 2016.

Compl. ¶¶ 1, 14, 25; Complaint Exhibit 1 ("Policy") [ECF No. 1-1].  The Colony Policy provides

coverage for claims in connection with "Real Estate Development Service[s]."[3]  Policy Item 3.

The Policy states that Colony "agrees to pay on behalf of [Pine], Loss in excess of the

Deductible amount and up to the Limits of Liability . . . provided that such Loss results from a

Claim first made and reported in writing during the Policy Period . . . [and] aris[es] out of a

Wrongful Act committed . . . on or after the Retroactive Date" and "before the end of the Policy

Period."  Compl. ¶ 15; Policy I.A.1.  The Policy defines a "Claim" as "a written demand received

by [Pine] for monetary, non-monetary or injunctive relief."  Compl. ¶ 16; Policy III.B.1.  It also

states that "[t]wo or more Claims arising out of a single Wrongful Act, or any series of related

---

[2] The parties have stipulated that the Complaint in this action shall be deemed to include the Schneider Complaint and all exhibits that were attached to it, including the HK Letter.  *See* Proposed Stipulation and Order ¶ 3 [ECF No. 21].  Accordingly, the Court may consider the HK Letter in evaluating this Rule 12(c) motion.

[3] For purposes of this motion, Colony does not dispute that the Schneider Complaint alleges claims based on Pine's "Real Estate Development Services."  Memorandum of Law in Support [ECF No. 25] at 2 n.3.

**SPA-3**

Wrongful Acts, will be considered a single Claim" and each Wrongful Act "will be deemed to have occurred on the date of the first such Wrongful Act."  Policy VI.C.

Finally, a "Wrongful Act" is defined as "any actual or alleged act, error or omission, or breach of duty by [Pine] in the rendering or failure to render Real Estate Development Services." Compl. ¶ 17; Policy III.II.  The Colony Policy expressly *excludes* from coverage any Claim "arising out of a Wrongful Act . . . occurring prior to the Policy Period if, prior to the effective date . . . [Pine] had a reasonable basis to believe that [it] had committed a Wrongful Act."  Compl. ¶ 21; Policy IV.A.2.

### III.    Pine's Claim for Coverage

Colony disclaimed any obligation of defense or indemnity for the Schneider Action. Compl. ¶ 46.  Pine then filed this Complaint against Colony in March 2022, alleging breach of contract.  Compl. ¶¶ 64–78.  Pine seeks damages and a declaration that Colony has a duty to defend and to indemnify in the Schneider Action.  Compl. ¶¶ 54–63, 78.

Colony moves for judgment on the pleadings under Rule 12(c).  *See* Motion for Judgment on the Pleadings [ECF No. 23]; Memorandum of Law in Support [ECF No. 25] ("Def. Mem."). Pine opposed.  *See* Memorandum of Law in Opposition [ECF No. 26] ("Pl. Opp."). Colony replied. *See* Reply Memorandum of Law in Support [ECF No. 28].

### LEGAL STANDARD

The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is identical to the Rule 12(b)(6) standard.  *See Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  The Complaint therefore "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* On a Rule 12(c) motion, the Court "considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Sarikaputar v. Veratip Corp.*, 371 F. Supp. 3d 101, 104 (S.D.N.Y. 2019) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

<u>**ANALYSIS**</u>

The Policy provides Pine with both defense and indemnity coverage. Colony raises three, independently sufficient reasons, for why there is no possibility of coverage here. Although a motion for judgment on the pleadings is "an unusual procedural posture for a duty to defend case," the Court agrees that the express provisions of the Colony Policy preclude any coverage, defense, or indemnity, in connection with the Schneider Complaint. *Suez Treatment Sols., Inc. v. ACE Am. Ins. Co.*, No. 1:20-CV-06082 (MKV), 2022 WL 954601, at *1 (S.D.N.Y. Mar. 30, 2022). As such, there is no duty to defend or to indemnify. *See EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8, 11 (2d Cir. 1990).

**I.    The Claim Was Not Made and Reported During the Policy Period**

The Colony Policy provides coverage for "Claims first made and reported in writing during the Policy Period." Compl. ¶ 15; Policy I.A.1. Colony argues that the Schneider Action is outside the scope of coverage because the HK Letter, which was sent on July 7, 2018, constitutes a "Claim" that was first made *before* the policy incepted on August 1, 2018. Def. Mem. 8–12.

a.    *<u>The HK Letter is a "Claim"</u>*

A "Claim" is defined by the Policy as "a written demand received by [Pine] for monetary, nonmonetary, or injunctive relief." Compl. ¶ 16; Policy III.B.1. The HK Letter plainly meets this

**SPA-5**

definition of a "Claim."  In the letter, Schneider's counsel "advise[d] [Pine] of claims by the Schneider/Schwartz Group against Pine."  *See* HK Letter 1.  Counsel contends that "there are many serious issues arising from Pine's management . . . and such claims should survive a motion to dismiss and a motion for summary judgment."  HK Letter 2.  Counsel then detailed a number of allegations, including that Pine "breached its fiduciary dut[ies], "ha[d] not acted in good faith," "breached provisions of the governing Operating Agreements," "failed to disclose material facts," was "involved in related party transactions," and "failed to provide key documents."  HK Letter 1. The HK Letter also alleges that Pine was paid $622,742 in fees in 2017, despite the fact that Pine had "no authority to pay itself fees."  HK Letter 7.  The HK Letter requests non-monetary relief in the form of an accounting and demands ten categories of documents for inspection.  *See* HK Letter 5, 11.  Finally, counsel "suggest[s] that a meeting be scheduled to resolve the Schneider/Schwartz Group's concerns," in an effort to "bring about a mutually satisfactory resolution of these claims without having to commence litigation that would be costly to all parties involved."  HK Letter 2, 13.

Pine provides several theories for why the HK Letter is not a "Claim."  None succeeds. First, Pine contends that the HK Letter simply "recite[s] . . . point[s] of law" and "requests to review documents."  Pl. Opp. 6.  However, Second Circuit precedent indicates that a letter "set[ting] forth [a] request under a claim of right, including [an] entitlement to the documents identified" is sufficient to put an insured "on notice of the legal consequences of any failure to comply."  *Weaver v. Axis Surplus Ins. Co.*, 639 F. App'x 764, 766–67 (2d Cir. 2016).  Moreover, even where monetary damages are not "specifically request[ed]," a "demand[] that [an insured] rectify [a] problem" can be sufficient to constitute a claim.  *McCabe v. St. Paul Fire & Marine Ins. Co.*, 79 A.D.3d 1612, 1614, 914 N.Y.S.2d 814, 816 (4th Dep't 2010).  Here, the HK Letter alleged misconduct, cited theories of liability, referenced legal authority, demanded specific

documents, requested an accounting, and suggested a meeting.  That is sufficient under New York law to constitute a claim.

Pine next attempts to characterize the HK Letter as using "precatory language," which failed to put Pine "on notice of the drastic legal repercussions that could result from noncompliance."  Pl. Opp. 7 (citing *Gil Enters., Inc. v. Delvy*, 79 F.3d 241, 246 (2d Cir. 1996)).  But this assertion is contradicted by the plain language of the Letter, which explicitly mentions litigation and hypothesizes that the claims should survive pre-trial motion practice.

Finally, Pine attempts to manufacture a dispute of fact by asserting that what the requested meeting might "entail goes unstated in the [HK] letter."  Pl. Opp. 8.  But no such statement is necessary.  "Although counsel did not *specifically* state that the purpose of [the requested] meeting was to demand monetary damages or other relief, the implication" of the HK Letter "is that counsel requested the meeting for this reason."  *Seneca Ins. Co. v. Kemper Ins. Co.*, No. 02 CIV. 10088 (PKL), 2004 WL 1145830 (S.D.N.Y. May 21, 2004), *aff'd*, 133 F. App'x 770 (2d Cir. 2005).

      b.    *The Schneider Action and the HK Letter Are a Single*
              *"Claim" That Was Not Made During the Policy Period*

Pine does not contest that the HK Letter was a predicate of the Schneider Action, which also indisputably is a Claim.  Under the Policy, "[t]wo or more Claims arising out of a single Wrongful Act, or any series of related Wrongful Acts, will be considered a single Claim."  Policy VI.C.  The Schneider Complaint involves largely the same facts, circumstances, and alleged violations as the HK Letter.  *Compare* HK Letter, *with* Schneider Compl.  Indeed, the Schneider Complaint itself explains that the HK Letter "discussed in great detail . . . [the] Plaintiffs' claims" against Pine.  Schneider Compl. ¶ 19.  As such, the Schneider Complaint and HK Letter are "considered a single Claim."  That Claim was made *before* the Policy Period—on the date the HK Letter was sent (July 17, 2018).  Because the Letter *predated* the Policy Period, the Schneider

**SPA-7**

Action is not covered by the Colony Policy.  This finding is independently sufficient to grant judgment on the pleadings.

## II.       Pine Had Knowledge of an Alleged "Wrongful Act" Prior to the Policy Period

Colony next contends that coverage is precluded because Pine was aware that it had committed a "Wrongful Act" prior to the effective date of the Policy.  The Colony Policy expressly excludes from coverage any Claim "arising out of a Wrongful Act . . . occurring prior to the Policy Period if, prior to the effective date . . . [Pine] had a reasonable basis to believe that [it] had committed a Wrongful Act."  Compl. ¶ 21; Policy IV.A.2.  A "Wrongful Act" is "any actual or *alleged* act, error or omission, or breach of duty by [Pine]."  Compl. ¶ 17; Policy III.II (emphasis added).

Under New York law, Pine must have *both* objective *and* subjective knowledge that it had committed a Wrongful Act.  *See Liberty Ins. Underwriters, Inc. v. Corpina Piergrossi Overzat & Klar LLP*, 78 A.D.3d 602, 604, 913 N.Y.S.2d 31, 33 (1st Dep't 2010).  More particularly, the subjective prong requires *Pine's* knowledge of the relevant facts prior to the effective date of the Policy, while the objective prong requires a showing that *a reasonable insured* might expect such facts to be the basis of a claim.  *Id.* at 604–05, 33.

After receiving the HK Letter, Pine was *subjectively* aware that it had committed a "Wrongful Act."  As described above, the HK Letter accused Pine of a variety of improper acts and breaches of duty.  Those allegations of misconduct—*regardless* of whether they were true or false—put Pine on notice of an *alleged* act, error, omission, or breach of duty.  Although Pine argues that the HK Letter did not "provide Pine with a reasonable basis to believe it *actually had committed* an alleged wrongdoing," Pl. Opp. 14–15 (emphasis added), no such showing is necessary where, as here, the Policy defines a "Wrongful Act" as including *alleged* acts.  Moreover, the subjective prong "simply requires that the insured know the facts underlying the

7

eventual . . . claim." *N. River Ins. Co. v. Leifer*, No. 21-CV-7775, 2022 WL 1210847, at *2 (S.D.N.Y. Apr. 25, 2022). The subjective prong is therefore satisfied.

For the same reason, the contents of the HK Letter would have informed a reasonable insured that it had committed an *alleged* Wrongful Act. Again, even assuming the allegations were false, a reasonable insured would have been put on notice by the allegations included in the HK Letter and therefore would have "*some* basis to anticipate a claim, regardless of whether the claim [was] likely to be filed or likely to succeed." *Leifer*, 2022 WL 1210847, at *3 (emphasis in original). Pine fundamentally misunderstands the objective prong, providing a smattering of different theories that, it alleges, might "impact a reasonable person's belief" that allegations in the HK Letter "would manifest in[to] a claim." Pl. Opp. 15, 16 (quotations omitted). But whether the claims were *actually pursued* is immaterial—the question is simply whether there was "*some* basis to anticipate a claim." *Leifer*, 2022 WL 1210847, at *3. Because there was "*some* basis" here, the objective prong is satisfied. *Id.*

Pine was subjectively and objectively aware that it had committed a "Wrongful Act" prior to the effective date of the Policy. The Schneider Complaint and HK Letter, which are treated as a single "Claim," are therefore not covered by the Colony Policy. This conclusion, too, is independently sufficient to grant judgment on the pleadings.

### III.    The Alleged "Wrongful Acts" Predate the Retroactive Date

Finally, the Policy only provides coverage for a "Claim . . . [that] aris[es] out of a Wrongful Act committed . . . on or after the Retroactive Date" and "before the end of the Policy Period." Compl. ¶ 15; Policy I.A.1. The Policy deems "[e]ach Wrongful Act, in a series of related Wrongful Acts" to "have occurred on the date of the *first* such Wrongful Act." Policy VI.C (emphasis added). Therefore, Colony argues that if even a *single* related Wrongful Act alleged in the

**SPA-9**

Schneider Complaint was committed *before* March 1, 2016, there is no coverage for *any* related Wrongful Act—even those committed *after* March 1, 2016.

In determining whether two acts are related, the relevant inquiry is "whether the underlying claims are based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events." *Nomura Holding America, Inc. v. Fed. Ins. Co.*, 629 F. App'x 38, 40 (2d Cir. 2015) (citation omitted).

The Schneider Complaint alleges a long history of mismanagement by Pine and includes a number of allegations pre-dating March 1, 2016. For instance, it alleges that Pine "breach[ed] the Operating Agreements" by approving loans "outside the ordinary course of business" from September 2015 to June 2019, that Pine "paid management fees and construction management fees to itself" without approval "for the years 2012 through the first six months of 2019," and that, commencing in 2012, Pine dramatically increased cash reserves and reduced distributions to members without approval. Schneider Compl. ¶¶ 13, 16, 132 (internal quotation marks omitted).

In all, the Schneider Complaint alleges a history of business mismanagement by the same entity (Pine) in its operation of the same business (Real Estate Development Services) with the same parties (the Schneider Plaintiffs). Accordingly, the Court concludes that all of the allegations in the Schneider Complaint are "related" because they "are based upon . . . [a] related series of facts, circumstances, situations, transactions or events." *Nomura*, 629 F. App'x at 40.

In response, Pine vaguely contends, without legal authority, that the "trier of fact in the Schneider Action might determine that if Pine committed any Wrongful Act, it was committed after the Retroactive Date." Pl. Opp. 24. That point is irrelevant to the question of whether acts alleged *after* the retroactive date are related to acts that allegedly occurred *before* it.

Lastly, Pine identifies two allegations in the Schneider Complaint that it contends are "not tethered to any other alleged pre-Retroactive Date Wrongful Act." Pl. Opp. at 24. Not so. One allegation addresses Pine's refusal to provide records or to permit inspection of documents in March 2018, but the Complaint alleges a prior history of withholding similar information. *See* Schneider Compl. ¶¶ 406–16. The other allegation—that Pine attempted to amend the Operating Agreements to allow Pine to act as the manager in perpetuity—appears similarly related to the alleged history of Pine's self-aggrandizement and self-dealing. Because all of the Wrongful Acts contained in the Schneider Complaint either precede the Retroactive Date or relate to Wrongful Acts that do, the Colony Policy provides no coverage.

For these three independently sufficient reasons, the Court finds no possibility of coverage under the Colony Policy. Accordingly, Colony has no duty to defend or to indemnify Pine and judgment on the pleadings for Colony is appropriate.

## **CONCLUSION**

For the foregoing reasons, the motion for judgment on the pleadings is GRANTED. The Clerk of Court is respectfully requested to enter judgment for Colony dismissing the case, terminate docket entry 23, and close this case.

**SO ORDERED.**

Date:  **March 20, 2023**
       **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

10

**SPA-11**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
PINE MANAGEMENT, INC.,

                 Plaintiff,

    -against-                              22 **CIVIL** 2407 (MKV)

                                                  **<u>JUDGMENT</u>**

COLONY INSURANCE COMPANY,

                 Defendant.
-----------------------------------------------------------X

       It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum Opinion and Order dated March 20, 2023, Defendant's motion for judgment on the pleadings is GRANTED. Judgment is entered for Colony dismissing the case; accordingly, the case is closed.

**Dated:** New York, New York

      March 21, 2023

                                          **RUBY J. KRAJICK**

                                      _____
                                           **Clerk of Court**

                **BY:**        *K. Mango*

                                        _____
                                           **Deputy Clerk**